Case 1:24-cr-00192-APM   Doc

Case: 1:24-mj-00055
Assigned To : Judge Zia M. Faruqui
Assign. Date : 2/12/2024
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, ███████, is a Special Agent assigned to FBI Boston Division. In my duties as a special agent, I have investigated allegations associated with domestic terrorism and international terrorism. I have completed training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, and various other criminal laws and procedures. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

According to records obtained through search warrants which were served on VERIZON and GOOGLE, in and around the time of the incident, an account associated with ▉▉▉▉▉ and email ▉▉▉▉▉▉▉▉▉ was identified as having utilized a cell site numerous times on January 6, 2021, from 2:20 PM to 2:49 PM, consistent with providing service to a geographic area that includes the interior of the United States Capitol building (Figure 1). Through law enforcement database checks, I determined that the ▉▉▉ number belonged to Thomas J. Method.



Figure 1

On April 4, 2022, I interviewed Thomas J. Method telephonically at the ▉▉▉ number. In reference to entering the U.S. Capitol on January 6, 2021, Method stated "I was there." Method

further indicated that on January 6, 2021, he attended the then-President Donald Trump's "Stop the Steal" rally before marching down Constitution Avenue towards the U.S. Capitol. Method indicated that when he reached the U.S. Capitol, he entered and reached the Capitol Rotunda. Method indicated that he remained in the Capitol Rotunda for ten minutes before exiting the U.S. Capitol building. He stated that if he knew violence was going to take place, he would not have gone to the Capitol. Method indicated that he left Washington, D.C. the following day.

On May 25, 2022, I interviewed Method for the third time telephonically. Method again admitted to entering the U.S. Capitol on January 6, 2021. He stated that he was not sure what he was wearing that day and provided a generic description of what he was wearing that day. Later that day, I interviewed Method in person. During the interview, Method viewed security camera video from within the U.S. Capitol on January 6, 2021, which I understood to include Method (Figures 2 & 3). I pointed Method out to him in the video. However, Method stated he could not identify himself, and that the person I pointed out in was not him, because he stated that he was wearing a hat backwards on that day and was not covering his ears. During the interview, Method admitted that he took photos with his phone of the U.S. Capitol Rotunda interior. Based on my observation of Method during this interview and photos I recovered later in the investigation (*e.g.*, Figure 5) with clear images of Method on January 6 wearing the same clothing shown in CCTV footage, I believe Method was falsely disclaiming that he was shown in these videos.



Figure 2



Figure 3

On May 28, 2022, I received a text message from Method (Figure 4), where he again admitted to being in the US. Capitol on January 6, 2021 and taking and deleting photos documenting his crimes on his phone, including potentially through Google Photos.



Figure 4

Based on records obtanied from Google LLC, I determined that Method has an active Google Account, the account was used on January 6, 2021 on multiple occasions, and that the account was accessed with an IP addressed in the DC metro area on January 6–7, 2021, with IP addresses locating in Method's home state of Massachusetts on January 5, 2021 and January 8, 2021, consistent with Method's admitted travel itinerary.

Following a search warrant to Google LLC, I identified a photograph on Method's phone that he took of himself inside the U.S. Capitol Rotunda (Figure 5) in front of the painting "Landing of Columbus."



Figure 5

Additionally, I identified a video Method took of himself on January 5, 2021 driving to Washington, D.C. (Figure 6). In the video, Method states: "Hopefully the strength in numbers and this movement will get more Senators on board, and we can overthrow this fraud like I have never seen before in my life . . . . They are going to have metal detectors. The Antifas not going to be in their colors. They are going to be in plain clothes but so is the Secret Service and the security. Hopefully, Biden don't get in. I don't care what happens as long as Trump maintains his presidency. I have a feeling it's going to be mayhem, chaos, and pandemonium."



Figure 6

Based on the foregoing, your affiant submits there is probable cause to believe that Method violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official

proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Your affiant submits that there is also probable cause to believe that Method violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Method violated 40 U.S.C. §§ 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.



Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 12th day of February 2024.

_____
ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE